UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BARBARA NORRIS,**

        Plaintiff,

vs.

**CONSUMERS ENERGY COMPANY**
and **CMS ENERGY CORPORATION,**
jointly and severally,

        Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

      There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **BARBARA NORRIS**, for her Complaint against Defendants Consumers Energy Corporation and CMS Energy Corporation, stating the following:

## **INTRODUCTION**

1. Plaintiff Barabara Norris was employed with Consumers Energy Company for approximately seventeen years without issue of discipline. Relevant to this case, Plaintiff is diagnosed with an emotional disability, severe depression, for which she receives regular treatment and medication. In 2024, Plaintiff was placed under the management of a new supervisor who demonstrated animus towards Plaintiff due to her disability and treated her unequally. Plaintiff submitted protected complaints and sought help from both management and human resources, without success. The situation triggered Plaintiff's condition requiring her to take leave, including hospitalization. After Plaintiff unsuccessfully sought accommodation. Plaintiff returned to work without accommodation and was terminated within weeks, despite working for consumers without issue for nearly two decades.

Within this Complaint, Plaintiff alleges that she was discriminated against due to her disability, Defendants failed to provide her with a reasonable accommodation, and retaliated against her in violation of her rights under the Americans with Disabilities Act, 42 USC § 12101, et seq (hereafter the "ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Michigan's Persons with Disabilities Civil Rights Act 220 OF 1976, MCL 37.1602, et seq. ("PWDCRA"), the Family Medical Leave Act of 1993 ("FMLA").

## PARTIES

2. Plaintiff Barbara Norris is an individual who was employed with the Defendants and resides in Jackson, Michigan, Jackson County.

3. Defendant Consumers Energy Company is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

4. Defendant CMS Energy Corporation is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

## JURISDICITON AND VENUE

5. The jurisdiction of this Court over this controversy is based on 28 U.S.C. § 1331, to enforce the provisions of the Americans with Disabilities Act, 42 USC § 12101, *et seq*. and the Family Medical Leave Act of 1993.

6. Plaintiff has exhausted all available administrative remedies and has obtained her "right to sue letter" from the EEOC. (***Exhibit A***)

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

9. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

3

## GENERAL ALLEGATIONS

10. Plaintiff Barbara Norris ("Plaintiff" or "Norris") began working for Defendants Consumer Energy Corporation and CMS Energy Corporation (collectively "Consumers") in 2007.

11. Beginning around 2020, Plaintiff was diagnosed with severe depression, for which she has since received regular treatment and been prescribed medicine.

12. Plaintiff's depression has caused significant difficulty for her to perform several major life activities, including, but not limited to, regulating emotions, communicating with others, concentrating, communicating, and self-care.

13. Nonetheless, Plaintiff has always been able to perform the essential functions of her positions with or without accommodation.

14. Until the relevant events of the case, Plaintiff always performed her duties at a satisfactory level and, until the relevant events of the case, was without discipline and a valued employee.

15. In September 2024, Plaintiff was promoted to the position of Principal Instructional Designer. In this position, Plaintiff was placed under a new supervisor, Jessica Stock ("Stock").

16. At or around the same time as Plaintiff's promotion, another employee, Sarah Leitter ("Leitter") to a comparable position as Plaintiff also working under Stock.

4

On information and belief, Leitter does not suffer from an emotional disability comparable to Plaintiff.

17. Plaintiff openly discussed her depression and emotional disability with Stock.

18. As a supervisor, Stock held Plaintiff to unequal standard compared to her coworkers and acted extremely hostile towards her. Notably, Stock would comment negatively towards Plaintiff about things coworkers would do identically without issue. Further, Stock would often comment that she assumed that Plaintiff didn't even want her new position.

19. During Plaintiff's 2024 evaluation, Plaintiff reiterated to Stock that she suffers from severe depression. In response, Stock downplayed Plaintiff's condition stating that "we all go through bad times" and that it should affect any work.

20. In February 2025, Plaintiff again discussed with Stock her severe depression and also informed Stock that she believed that she is being treated unequally and that Stock is acting hostile towards her. During the meeting, Plaintiff wept describing her condition and treatment.

21. Plaintiff's comments amount to a protected activity under the ADA, Title VII, and PWDCRA.

22. Following the protected complaint, Plaintiff was placed on a 90 day Performance Improvement Plan ("PIP") for the first time in her career, despite no

5

demonstratable performance issues. This was also the first notice of any purported performance issues throughout her time at Consumers. While going over the PIP, Stock suggested that Plaintiff go on a leave of absence due to her emotional condition.

23. Following the PIP, Plaintiff filed a complaint against Stock with Consumers' ethics and compliance department, specifically Dave Corravo ("Corravo"). Within the complaint and subsequent conversation, Plaintiff described her emotional disability and unequal treatment. Plaintiff also inquired about the possibility of switching supervisors or some form of skip-level supervision.

24. Reasonably, the jarring retaliatory treatment by Consumers caused Plaintiff substantial emotional distress and triggered her disability.

25. On or around April 1, 2025, Plaintiff called in sick for a few days to manage her significantly heightened condition. On or around April 9, 2025, Plaintiff's condition became so severe that she was placed in inpatient hospitalization for over a week. Prior to this, Plaintiff's emotional disability had never been this severe in her life.

26. While in the hospital, Plaintiff was also diagnosed with anxiety and prescribed additional medicine and treatment. Plaintiff's condition now affected her ability to sleep, regularly caused nightmares, and significantly heightened her blood pressure, causing other health issues.

27. Plaintiff was approved for medical leave to address her serious health condition.

28. On or around April 18, Plaintiff was discharged from the hospital. Shortly after, Plaintiff reached out to Consumers' human resources, specifically Joseph Cortellini ("HR Cortellini"), to discuss potential accommodations to assist with returning to work. During the conversation, Plaintiff suggested returning to her previous department. However, Cortellini responded that he wasn't sure there would be an open position for her. Next, Plaintiff responded that she had already spoken to her former supervisor who said they would be happy to have her back and that there two openings either existed or were soon created. Cortellini responded that he would check into it. Notably, Plaintiff never heard back from Cortellini on this topic.

29. Following Plaintiff's conversation with Cortellini, Plaintiff heard back from Corravo who informed her that Consumers found her discrimination complaint to be unsubstantiated.

30. Plaintiff continued her discussions seeking accommodation for her disability, so that she could return to work. Plaintiff, as well as her psychiatrist, were now discussing accommodation with Human Resources Representative Angela Nortley ("HR Nortley").

31. Ultimately, Consumers' final proposed accommodation was for Plaintiff to continue working under Stock, but that HR Cortellini be present during any disciplinary conversations with between her and Stock, but only for the next thirty (30) days.

7

32. Importantly, HR Cortellini would be completely unavailable for the first 14 days of the 30 day period, nearly half of the proposed time.

33. Plaintiff felt the proposal was of bad faith and rejected it as it was essentially no accommodation at all. Plaintiff was then informed that she would be terminated if she did not accept this proposal and return to work by June 19, 2025.

34. Plaintiff requested to utilize some of her accumulated banked vacation time to remain on leave to continue to resolve her emotional disability. However, Plaintiff was informed, without justification, that she was only approved to use a single week of banked leave.

35. Around this same time, Plaintiff again requested to be moved back to her former position, however, the request was denied. On information and belief, there was a position available for her.

36. Having no other choice, Plaintiff returned to work without accommodation.

37. Plaintiff was terminated approximately three weeks later on July 11, 2025.

38. On information and belief Plaintiff was replaced by an individual who is without an emotional disability.

39. Since her termination, Plaintiff has received several recruitment emails seeking to place someone in Plaintiff's former position, for which she was misleading, informed there were no available openings.

40. On or around August 1, 2025, Plaintiff submitted a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Americans with Disabilities Act, 42 USC § 12101, *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). On December 5, 2025, Plaintiff was issued the right to sue by the EEOC for her claims pursuant to Title VII. ***Exhibit A***

## COUNT I
## DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITY ACT/TITLE VII

41. All preceding paragraphs are incorporated by reference.

42. At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the ADA and Title VII.

43. Plaintiff has a serious and disabling medical condition, a covered disability under the act, was perceived as having a disability and/or had a record of having a disability.

44. Plaintiff's disability affected her ability to engage in one or more major life activities, including, but not limited to, regulating emotions, communicating with others, concentrating, communicating, self-care, and sleeping.

45. Plaintiff was able to perform the essential functions of her position with or without accommodation.

46. Defendants discriminated against Plaintiff by placing her on a performance improvement plan due to her disability in violation of her rights pursuant to the ADA and Title VII.

47. Defendants discriminated against Plaintiff by refusing to allow her to transfer positions due to her disability in violation of her rights pursuant to the ADA and Title VII.

48. Defendants discriminated against Plaintiff by terminating her due to her disability in violation of her rights pursuant to the ADA and Title VII.

49. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT II**
**DISABILITY DISCRIMINATION – MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602**

50. All preceding paragraphs are incorporated by reference.

51. Plaintiff is a person with a disability within the meaning of MCL § 37.1103(g) whose disability qualifies as such under MCL § 37.1103(d).

52. Defendants are employers of the Plaintiff within the meaning of MCL § 37.1201(b).

53. Plaintiff has a serious and disabling medical condition, a covered disability under the act, was perceived as having a disability and/or had a record of having a disability.

54. Plaintiff's disability affected her ability to engage in one or more major life activities.

55. Plaintiff was/is qualified for her former position.

56. Plaintiff received unequal treatment and discipline due to her disability.

57. Plaintiff was terminated due to her disability.

58. As a direct and proximate result of Defendants' discrimination, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

### COUNT III
### DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE – AMERICANS WITH DISABILITY ACT, 42 U.S.C. §§12101 *et. seq.*

59. All preceding paragraphs are incorporated by reference.

60. Plaintiff was/is qualified for her former position.

61. Plaintiff submitted requests for reasonable accommodation to Defendants.

62. Plaintiff submitted adequate notice of a request for accommodation to trigger Defendants' obligation to engage in the ADA's interactive process.

63. The accommodation(s) sought by the Plaintiff were reasonable as they would not have caused Defendant undue hardship.

64. The Defendant was under a legal duty to provide Plaintiff with reasonable accommodation for her disability, and to not discriminate against her on the basis of her disability.

65. Defendants rejected Plaintiff's requested accommodation and failed to adequately engage in the interactive process, without justification.

66. Defendants proposed an accommodation in bad faith which did not adequately accommodate Plaintiff.

67. Defendants discriminated against the Plaintiff when it failed to engage in the ADA's interactive process to provide a reasonable accommodation.

68. Defendant's failure to adequately engage in the interactive process prevented the identification of an appropriate accommodation for Plaintiff, a qualified individual.

69. Defendants' violations of the ADA have been done with malice and/or reckless indifference to the Plaintiff's rights, thereby subjecting the Defendants to exemplary damages, in addition to all other damages available at law.

70. As a result of Defendants' ADA violation, Plaintiff was faced with the decision to either return to work or be terminated. For this reason, Plaintiff returned without accommodation.

71. Nonetheless, Plaintiff was terminated shortly after her return.

72. Plaintiff has received her right to sue under the ADA and her claim is timely. ***(Exhibit A)***

73. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT IV
## DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602

74. All preceding paragraphs are incorporated by reference.

75. Defendants are/were under a legal duty to provide Plaintiff with reasonable accommodation for her disability, and to not discriminate against her on the basis of her disability.

76. Plaintiff submitted a written request for a reasonable accommodation.

13

77. Notwithstanding the Defendants' legal duties, it has nonetheless violated those duties, and thus violated the PWDCRA, by failing to afford plaintiff reasonable accommodations necessary to continue working or even engage in the interactive process to determine potential alternative accommodations.

78. Defendants' violations of the PWDCRA have been done with malice and/or reckless indifference to the plaintiff's rights, thereby subjecting the defendant to exemplary damages, in addition to all other damages available at law.

79. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

### COUNT V
### RETALIATION – ADA/ TITLE VII

80. All preceding paragraphs are incorporated by reference.

81. Plaintiff engaged in activity protected by the ADA when she complained of the discrimination and unequal treatment she was subjected to in the workplace.

82. Defendants retaliated against Plaintiff for her protected activity by placing her on a performance improvement plan.

83. Defendants retaliated against Plaintiff by refusing to allow her to transfer positions due to her protected activity.

84. Defendants discriminated against Plaintiff by terminating her due to her protected activity.

85. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION – MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602

86. All preceding paragraphs are incorporated by reference.

87. Plaintiff submitted protected reports and complaints of unequal treatment due to her disability.

88. Defendants retaliated against Plaintiff for her protected activity by placing her on a performance improvement plan.

89. Defendants retaliated against Plaintiff by refusing to allow her to transfer positions due to her protected activity.

90. Defendants discriminated against Plaintiff by terminating her due to her protected activity.

91. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT VII
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - RETALIATION

92. All preceding paragraphs are incorporated by reference.

93. Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii).

94. At the time of her leave, she had worked over 1250 hours within the 12 month period preceding her leave request.

95. Defendants have more than 50 employees and are employers subject to the FMLA.

96. Plaintiff utilized approved protected leave for treatment of a serious medical condition and ongoing therapy relating to his serious health condition.

97. Defendants retaliated against Plaintiff in violation of the FMLA by terminating her due to her use of FMLA to address a serious medical condition.

98. Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

99. There is a causal connection between plaintiffs protected activity and Defendants' retaliatory actions described above.

100. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendants constitute unlawful practices in violation of the ADA, TITLE VII, PWDCRA, and the FMLA;

b. Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c. Award Plaintiff appropriate equitable relief;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive damages;

f. Award Plaintiff liquidated damages under the FMLA;

g. Award Plaintiff reasonable attorney fees, costs and interest; and

    h.    Award such other relief as this Court deems just and proper.

                                  Respectfully submitted,

                                  By: /s/ Jack W. Schulz
                                  Jack W. Schulz (P78078)
                                  SCHULZ LAW PLC
                                  645 Griswold St Ste 4100
                                  Detroit, MI, 48226
                                  (313) 788-7446
                                  jack@michiganworkerlaw.com
                                  *Attorneys for Plaintiff*

DATE:   December 11, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BARBARA NORRIS,**

    Plaintiff,

vs.

**CONSUMERS ENERGY COMPANY** and **CMS ENERGY CORPORATION,** jointly and severally,

    Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

_____/

## DEMAND FOR TRIAL BY JURY

Plaintiff Barbara Norris hereby demands a trial by jury.

    Respectfully submitted,

    By: /s/ Jack W. Schulz
    Jack W. Schulz (P78078)
    SCHULZ LAW PLC
    645 Griswold St Ste 4100
    Detroit, MI, 48226
    (313) 788-7446
    jack@michiganworkerlaw.com
    *Attorneys for Plaintiff*

DATE: December 11, 2025